UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 06-47-DCR
CIVIL NO. 07-193-DCR

UNITED STATES OF AMERICA                                                                 PLAINTIFF

VS:                              RECOMMENDED DISPOSITION

DANNY D. CLARK                                                                           DEFENDANT

\* \* \* \* \*

The Court considers Defendant Danny D. Clark's *pro se* § 2255 motion, on referral from the District Judge. *See* DE #230. Clark previously pled guilty to one count alleging conspiracy to distribute and possess with intent to distribute oxycodone. *See* DE # 218 (hereinafter "Judgment"). The District Court sentenced Clark to a twenty year prison term, the statutory maximum. *See id*.; 21 U.S.C. § 841(b)(1)(C). Clark did not appeal, but filed the pending § 2255 motion. *See* DE #230-1 (hereinafter "§ 2255 Application"); DE #230-2 (hereinafter "Supporting Memo").

The only issue for consideration is whether defense counsel improperly failed to appeal or consult Clark about appealing. The claim required additional briefing, and the Court directed the parties to supplement and/or clarify the record. *See* DE #248. The parties complied with the Court's order, and the matter is ripe for decision. *See* DE #249 & #250. For the reasons stated, the Court recommends that the District Court DENY Clark's motion to vacate.

**I. Factual Background**

A.

Clark's § 2255 motion originally asserted nine claims, leading with the conclusory allegation that "counsel failed to file an appeal." *See* § 2255 Application at 5. The failure-to-appeal issue, however, received no further mention or analysis in Movant's supporting memorandum or in the amendments that Clark made to the petition. *See id.* at 5-6; Supporting Memo at 1-2; DE #235 (Amendments). Despite the isolated reference to the matter, the United States responded to the nominal claim. *See* DE #242-1 at 7-9 (hereinafter "Response"). According to the Government, Clark has no claim for ineffective assistance because he consulted with counsel and determined not appeal. *See id.*; *see also Roe v. Flores-Ortega*, 120 S.Ct. 1029, 1035 (2000)("[A] defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

The Government response relied on the sworn statements of Clark's retained trial counsel, Derek Gordon. Gordon explains that he and an associate "spoke" to Clark on or about March 21, 2007 to discuss Clark's appeal rights and options. *See* DE # 242-2 ¶¶ 1-2 (hereinafter "Gordon I"). According to Gordon, Clark "decided not to file an appeal of his conviction/sentence" at the end of the conversation. *See id.* ¶ 2. Gordon also indicates that he mailed a letter to Defendant almost immediately confirming the decision. *See id.* ¶ 3-4. Aside from the correspondence, Gordon reports no further contact with Clark. *See id.* at ¶ 5.

Clark replied to the Government's response and focused exclusively on whether counsel failed to appeal or consult Clark about appealing. *See* DE #245-1 (hereinafter "Reply"). Indeed, Movant **expressly** withdrew all other claims from consideration. *See id.* at 1. Clark asserts that he

2

never told Gordon or his associate that he had decided not to appeal. *See* DE #245-2 ¶ 8 (hereinafter "Clark I"). As for the March 21, 2007 consultation described by Gordon, Clark alleges that no one informed him about his appeal rights on that date. *See id.* ¶ 7. Even if the discussion happened, Clark argues that the consultation would not have been conducted in a timely manner. Because the District Court sentenced Clark and entered Judgment on February 20, 2007, he accurately notes that the ten day period to appeal, *see* Fed. R. App. P. 4, would have expired, absent extension, by March 21. *See* Reply at 3.

Furthermore, Clark indicates that the appeal deadline lapsed without any advice or consultation by counsel. *See id.* At most, Clark reports only a "brief discussion" with Gordon following his sentencing hearing on February 20. *See* Clark I ¶ 3. According to Clark, the conversation did not address an appeal. Gordon purportedly told Defendant, "I will die before I see you do all of that time," in reference to Clark's statutory-maximum twenty year term. *See id.* Gordon also instructed Clark to "call" if he "needed anything," but Defendant alleges that Gordon refused his phone calls:

> [F]or approximately two weeks after my sentencing, I attempted to contact Mr. Gordon by telephone regarding my appeal, but none of my calls were accepted. Therefore, I asked my sister . . . and my daughter . . . to call Mr. Gordon regarding the status of my appeal.

*See id.* ¶¶ 3-4. Clark's reply brief indicates that his family "left several messages with [Gordon's] office in regards to the appeal," but never spoke to Gordon. *See* Reply at 5. Other than the "limited" February 20 conversation, Clark asserts that he had no post-sentencing "discussion" with counsel. *See* Clark I ¶ 6.

Clark reports, however, that he received a written communication from Gordon in March 2007. *See* Clark I ¶ 5; *see also* Reply at 3. According to Clark, the correspondence "confirm[ed]

3

a decision not to appeal when no such decision had been made." *See* Reply at 3. Clark allegedly responded by calling Gordon's office "every thirty minutes until [the] call was accepted." *See* Clark I ¶ 5. He spoke to Rachel Yavelak, Gordon's associate, because Gordon was not available. Defendant described a brief conversation:

> I asked Ms. Yavelak why wasn't my notice of appeal filed. Ms. Yavelak stated, "What are you going to appeal on?" I responded, "The amount of pills and time." Ms. Yavelak replied, "You should be glad that twenty years is all you got." At that point, I ended the call.

*See id.*

Finally, Clark indicates that counsel should have filed an appeal even without consulting Defendant. *See* Reply at 4. Clark claims that he participated in a January 22, 2007 meeting at the federal courthouse with Gordon and the investigating officer, Barry Adams. *See* Clark I ¶ 2. Clark was at the courthouse for sentencing, but the District Court subsequently continued the matter to February 20. *See id.*; *see also* DE #205 & #214. The meeting was after Defendant's court appearance. According to Clark, Adams advised him not to "worry" about the impending sentence because he could "appeal" and "get it down to 13 years." *See* Clark I ¶ 2. Gordon allegedly replied, "Yes, we will do that."[1] *See id.* Because he did not object, Clark contends that he thereby implicitly assented to an appeal. *See* Reply at 4.

---

[1] Gordon's affidavit indicates that he met with Clark in January 2007 to discuss Defendant's objections to the PIR, but the affidavit does not identify the meeting date or location, or whether Adams was present. *See* Gordon I ¶¶ 10-12. According to Gordon's affidavit, counsel sent a written communication to Clark, on January 29, 2007, confirming Defendant's decision to withdraw his sentencing objections. *See id.* ¶ 12.

4

B.

The Court determined that the record required supplementation because the purported March 21, 2007 consultation and March 22 follow-up communication did not meaningfully correspond to the appeal deadline. *See* DE #248 at 2-3. In addition, the Court wanted to confirm the specifics of the March 2007 communication referenced by Clark. *See id.* at 3.

The United States submitted affidavits from Gordon and Rachel Yavelak, as well as four different written communications from Gordon to Clark. *See* DE #250. In his second affidavit, Gordon reports that he "spoke" to Clark "about appealing his sentence prior to the expiration of time." *See* DE #250-2 ¶ 1 (hereinafter "Gordon II"). The affidavit does not identify an exact time or location, and it provides no additional information about the substance of the alleged conversation. Gordon also reports that he mailed a letter to Defendant on February 23, 2007 addressing a potential Rule 35 motion and Clark's right to appeal. *See id.* ¶ 2. The supplemented record apparently includes a copy of the communication, which reads:

> This letter will confirm our court appearance this week at which you were sentenced to a term of 20 years. As you know, provided that you fully and truthfully cooperate with the government, the prosecutor has stated that he will file a Rule 35 motion asking the Court to decrease your sentence. However, this will not occur until after you have done all that the government requests of you.
>
> In addition, as the Court informed you and pursuant to your plea agreement, you do have the right to appeal any sentence in excess of 180 months. However, since so long as you cooperate fully, it is likely that a Rule 35 motion will be filed on your behalf, in my opinion, an appeal would not be helpful in your case.
>
> However, if you do wish to appeal, you have 10 days from the date that final judgment was entered against you in which to do so. Thus, if you do wish to appeal the sentence that you received, you must let me know immediately. If I do not hear from you, I will assume that you do not want

> to appeal your sentence. If you have any questions, please do not hesitate to contact me.

*See* DE #250-4.[2] According to Gordon, Clark "never requested" an appeal, although his second affidavit does not allege whether Clark affirmatively determined not to appeal. *See* Gordon II ¶¶ 3, 5. In addition, Gordon does not explain why his first affidavit failed to mention the critical February 23, 2007 communication or that he had spoken to Clark about appealing before the filing deadline expired.

Gordon's second affidavit also does not discuss the purported March 21, 2007 conversation, but it references the March 22 follow-up communication. *See id*. ¶ 4. The supplement materials include a copy of March 22 correspondence. The letter states:

> As you know, after several discussions about this matter and due to the fact that the Government has indicated that they would file a Rule 35 Motion for you if you continued to assist them and to tell them the truth, you decided not to file an appeal of the sentence that you received.
>
> As such, you need to make sure that you cooperate fully and truthfully with the Government since the more that you are able to assist them, the more time you will likely receive off of your sentence. Do not play games with them. If you have any questions, please do not hesitate to contact me.

*See* DE #250-3. The supplemented record further confirms that the correspondence mentioned in Clark's reply brief and affidavit is the March 22, 2007 communication. *See* DE #249-2 ¶ 2 (hereinafter "Clark II"); *see also* DE #249-3. Clark reports receiving the letter on or about March 26. *See* Clark II ¶ 2. Otherwise, Clark's supplemental materials provide no new information.

Rachel Yavelak, Gordon's associate, also submitted an affidavit confirming the information in Gordon's first affidavit about the March 21, 2007 conversation. *See* DE #250-7 ¶ 1 (hereinafter

---

[2] The Court notes that the letter does not indicate whether Gordon also "spoke" to Clark about appealing. The letter reads as if counsel had provided no previous appeal advice.

"Yavelak"). According to Yavelak, she "listened" to a discussion between Gordon and Clark on or about that date regarding Clark's decision not to appeal. *See id.* In addition to the March 21 encounter, Yavelak reports speaking to Clark on or about February 27, 2007. *See id.* ¶ 2. Clark allegedly informed her that he would "follow Derek's advice and not appeal." *See id.*

Finally, the supplemented record includes two more letters that Gordon purportedly mailed to Clark on or about October 3, 2006 and January 29, 2007. *See* DE #250-5 & #250-6. Gordon referenced both communications in his first affidavit, but furnished no copies. The October 2006 correspondence confirmed Clark's decision to plead guilty following a September 28, 2006 meeting with AUSA Stephen Smith and Barry Adams. The letter also reviewed Clark's potential Guidelines range and imprisonment term, as discussed during the September encounter. *See* DE #250-6.

The January 29, 2007 communication informed Clark that the United States did not intend to move for a 5K departure at sentencing, but would file a later Rule 35 motion, if Clark adequately cooperated.[3] In addition, the January correspondence confirmed Clark's decision to withdraw his PIR objections. According to the communication, Clark decided to withdraw his objections during a meeting with Gordon the preceding week. *See* DE #250-5. Thus, the meeting would have occurred at about the same time as the January 22, 2007 courthouse encounter described by Clark. *See* Clark I ¶ 2. Otherwise, Gordon's second affidavit makes no reference to the courthouse meeting, or to whether counsel expressed an intent to appeal, as Clark alleges.

## II. Analysis

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such

---

[3] To date, no Rule 35 motion has been filed.

sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255(a). Clark alleges that he received ineffective assistance, in violation of his Sixth Amendment rights, because counsel improperly failed to file an appeal. The Court applies the familiar *Strickland v. Washington* analysis to evaluate Defendant's claim and stated basis for § 2255 relief. *See Roe v. Flores-Ortega*, 120 S.Ct. 1029, 1034 (2000).

To satisfy *Strickland*, Clark must show that counsel's performance was both deficient and prejudicial. *See Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984). A defense attorney's representation is deficient if it "fell below an objective standard of reasonableness" based on "prevailing professional norms." *See id.* at 2064-65. As a general matter, prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 2068.

The Supreme Court recognizes that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *See Roe*, 120 S.Ct. at 1035. Moreover, a defendant in that scenario is entitled to a "new appeal without any further showing" of prejudice. *See id.* at 1039 ("[T]he defendant, by instructing counsel to perfect an appeal, objectively indicated his intent to appeal and was entitled to a new appeal without any further showing.")(citing *Rodriquez v. United States*, 89 S.Ct. 1715, 1717-18 (1969)). Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* at 1035.

In the Court's view, neither of these two rules applies on this record. Here, Clark never alleges that he gave counsel express instructions to appeal. At best, Clark argues that an explicit request was unnecessary because counsel previously suggested that he would file an appeal and

8

Defendant did not object. Clark explains:

> As a threshold matter, counsel *implied* that an appeal would be filed during the January 22, 2007 conversation. . . . [C]ounsel stated "we will do that" in response to [Barry] Adam's [sic] assertion that an appeal would result in a reduced sentence of thirteen (13) years. Seeing that an eventual sentence of twenty (20) years was imposed, it was expected that counsel would fulfill his previously stated commitment; thereby, making any request – for a notice of appeal – on the part of the movant superfluous under the circumstances.

*See* Reply at 4 (emphasis added).

The Court does not assess the legal merits of Clark's theory, but rejects the argument because it has no credible factual support. The context of the alleged conversation and Gordon's subsequent correspondence plainly indicate that counsel would have been referring to a Rule 35 motion – not an appeal. *See* DE #250-3 (March 22, 2007 letter); #250-4 (February 23, 2007 letter); #250-5 (January 29, 2007 letter). Furthermore, to the full extent that Clark misunderstood his appeal status or the distinction between an appeal and a Rule 35 motion, the February 23, 2007 communication from Gordon would have provided timely clarification.[4] The communication stated, in plain terms, that counsel expected the Government to file a Rule 35 motion if Clark cooperated; counsel believed that "an appeal would not be helpful" due to the potential Rule 35 motion; and counsel did not

---

[4] Clark nowhere discusses whether he did or did not receive the February 23, 2007 communication, but his reply brief, affidavit, and supplemental materials confirm that he received the March 22, 2007 correspondence from Gordon. *See* Clark II ¶ 2; *see also* DE #249-3. The Court notes that the February and March communications feature the same address for Defendant. *See* DE #250-3 & #249-3. On this record, the Court finds no basis to doubt that Clark received the February 23 letter.

In addition, Clark explains that he had to have another inmate read the March 22 communication to him. *See* Clark II ¶ 2. At his rearraignment, Clark described his ability to read and write as "not very good," although counsel plainly believed that he could communicate effectively with Clark via written correspondence. *See* DE #240 at 4 (Rearraignment Transcript). Clark, though *pro se*, nowhere asserts that he is not literate.

9

intend to file an appeal unless otherwise directed by Clark. *See* DE #250-4. Thus, Clark's contention that he implicitly assented to an appeal has no basis on this record.[5]

Although the record establishes that Clark never requested (explicitly or implicitly) direct review, the converse is in dispute, *i.e*, whether Clark affirmatively determined not to appeal. Rachel Yavelak reports that she spoke to Clark on or about February 27, 2007, and she alleges that Clark told her that he would follow Gordon's advice and not appeal. *See* Yavelak ¶ 2. The Government's other proof relates to a purported conversation on or about March 21, 2007. In his first affidavit, Gordon avers that Clark decided not to appeal at the **end** of the March 21 discussion. *See* Gordon I ¶¶ 1-2. Both affidavits from Gordon explain that he subsequently sent a letter to Clark confirming Clark's determination.[6] *See id*. ¶ 3; *see also* Gordon II ¶ 4. Yavelak also recalls a conversation on or about March 21 about Clark's decision not to appeal. *See* Yavelak ¶ 1.

Plainly, most of the Government's proof relates to a purported decision that would have occurred *after* the filing deadline expired. Moreover, the proof directly conflicts with Clark's affidavit. He unequivocally insists that "at no time did I inform Mr. Gordon and/or his associate that I decided against filing an appeal." *See* Clark I ¶ 8. In the Court's view, the facts are sufficiently in dispute to preclude a definitive resolution on this record.

---

[5] The Court also doubts that a case agent would opine about the prospects of an appeal on an as yet unknown sentence. In any event, the Adams-Gordon alleged exchange hardly qualifies as the type of specific direction to appeal, by a defendant, that *Roe* envisions. *See Roe*, 120 S.Ct. at 1035 (explaining that "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the *defendant's express instructions* with respect to an appeal")(emphasis added).

[6] The record features a March 22, 2007 communication referencing Clark's prior decision not to appeal. No other communication provided by Gordon mentions any determination by Clark relative to appealing.

Because Clark never explicitly instructed counsel to appeal, and because the record fails to establish whether Clark communicated the instruction not to appeal, the Court next considers "whether counsel in fact consulted with the defendant about an appeal." *See Roe*, 120 S.Ct. at 1035. The term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. If Gordon consulted with Clark, Defendant's ineffective assistance claim would fail because the record shows that Clark never "expressly" requested direct review. *See id*. (explaining that when a valid consultation occurred counsel performs deficiently "only by failing to follow the defendant's express instructions with respect to an appeal"). If Gordon did not consult Clark about appealing, the Court then must evaluate whether the "failure to consult . . . itself constitutes deficient performance." *See id*.

Here, the record is inconclusive as to whether counsel conducted a *verbal* consultation with Clark. Gordon's second affidavit generally alleges that he "spoke" to Clark "about appealing his sentence prior to the expiration of time." *See* Gordon II ¶ 1. Notably, Gordon does not identify a precise time or location, and he provides no details about the substance of the purported conversation. In fact, Gordon's first affidavit makes absolutely no reference to a discussion with Clark during the ten day period to file an appeal. According to Defendant, a brief conversation on February 20 was the only post-sentencing "discussion" that he had with Gordon, and Clark indicates that counsel did not address appealing at that time. *See* Clark I ¶¶ 3, 6. At this stage and on these facts, the Court cannot resolve whether Gordon actually "spoke" to Clark about appealing before the filing deadline lapsed.

11

The record, however, shows that Gordon mailed Defendant a timely written communication discussing Clark's appeal rights and options.[7] *See* DE #250-4 (February 23, 2007 letter); *see also* Gordon II ¶ 2. Because counsel anticipated a Rule 35 motion if Clark cooperated, the correspondence further advised Defendant that "an appeal would not be helpful." *See* DE #250-4. The communication instructed Clark to contact counsel "immediately" if he still desired direct review, and it stated that counsel would "assume" Defendant wanted no appeal unless notified. *See id*. In the Court's view, the correspondence could qualify as a consultation. *See Griffin v. United States*, 2007 WL 2481314, at *3-4 (W.D. Va. August 29, 2007); *see also Collins v. United States*, 2006 WL 848093, at *5-7 (S.D. W.Va. Feb. 27, 2006); *United States v. Marales-Morales*, 2005 WL 3845347, at *6 n.5 (D. Kan. Jan. 7, 2005); *Banks v. Muller*, 2003 WL 1798298, at *3 (N.D. Cal. April 1, 2003). The communication discussed the advantages and disadvantages of appealing, and it devised a reasonable method of ascertaining Defendant's interests – as long as Gordon was accessible. *See Roe*, 120 S.Ct. at 1035 (defining term "consult").

Here, Clark tries to make Gordon's accessibility an issue. His affidavit alleges:

> [F]or approximately two weeks after my sentencing, I attempted to contact Mr. Gordon by telephone regarding my appeal, but none of my calls were accepted. Therefore, I asked my sister . . . and my daughter . . . to call Mr. Gordon regarding the status of my appeal.

*See* Clark I ¶ 4. Defendant's reply brief indicates that his family never spoke to Gordon, but "left several messages with [Gordon's] office in regards to the appeal." *See* Reply at 5.

---

[7] Defendant does not mention the communication, but the Court finds no basis to doubt Clark's receipt. *See* note 4, *supra*. Undoubtedly, Clark also received notice of his right to appeal, including mechanics, from the Court at sentencing. *See* DE #216.

Notably, Clark never estimates the number of phone calls that he made to Gordon's office, and he does not identify any specific dates or times. The hour, the day of the week, and the frequency of the alleged phone calls would be useful in evaluating counsel's accessability. In addition, Clark's contention that his family contacted Gordon's office and "left several messages" is unsubstantiated hearsay. Clark asserts that his sister and daughter would testify about "their unsuccessful attempts to contact Mr. Gordon," but Defendant submitted no confirmatory affidavits. *See* Reply at 7; *see also id.* at 6.

Based on the written communications from Gordon, it appears that counsel actually encouraged Clark to contact his office. Each communication ends: "If you have any questions, please do not hesitate to contact me." *See* DE #250-3 - DE #250-6. The February 23, 2007 communication, in particular, instructed Clark to contact counsel "immediately" if he wanted to appeal. *See* DE #250-4. Moreover, Clark reports that Gordon's office accepted a phone call from Defendant in late March 2007. *See* Clark I ¶ 5; *see also* Yavelak Aff. ¶2 (indicating a personal conversation between Yavelak and Clark just after the February 23 letter where Clark "said that he was going to follow Derek's advice and not appeal"). To the Court, it makes no sense that Gordon's office would accept a call in late March, but refuse calls during the **critical** ten day period to file an appeal – especially when counsel's written communication explicitly instructed Clark to call. Simply put, Clark's bare allegation that counsel refused his phone calls has no credible support or basis on these facts. As such, and as the later communications reflect, Gordon could have reasonably determined that Defendant had no interest in pursing direct review. *See Roe*, 120 S. Ct. at 1035 (defining "consult" as, among other things, "making a reasonable effort to discover the defendant's wishes").

13

Even if a proper consultation did not occur, Clark would have to show that the "failure to consult . . . itself constitutes deficient performance." *See Roe*, 120 S.Ct. at 1035. According to *Roe*, counsel only has a duty to consult if either: 1) "a rational defendant would want to appeal," or 2) the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." *See id.* at 1036. In addition, unlike the failure-to-appeal context, a failure-to-consult claim requires a prejudice showing. Thus, Clark would also have to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038.

In this case, Clark argues that a "rational defendant" would have desired an appeal because he received the statutory maximum twenty year sentence, and because his plea agreement expressly reserved the right to appeal any sentence exceeding 120 months (10 years). *See* Reply at 4-5; DE #215 ¶ 8 (Plea Agreement); *see also Roe*, 120 S.Ct. at 1036 ("[T]he court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."). According to Clark, no reasonable defendant would have "bargained for" the statutory maximum. *See* Reply at 5.

The Court, however, must consider "all the information counsel knew or should have known." *See Roe*, 120 S.Ct. at 1036. Here, Gordon strategically anticipated a post-judgment reduction in Clark's sentence under Rule 35, and the record indicates that Clark agreed to the strategy and intended to cooperate. Because a lower sentence was still a potentiality under Rule 35, Clark plainly overstates the significance of his statutory maximum prison term and the appeal right reserved by the plea agreement in assessing whether counsel should have known that Defendant rationally would have desired an appeal.

14

Furthermore, Clark voluntarily pled guilty, and his reply brief identifies no meritorious issues for direct review. *See Roe*, 120 S.Ct. at 1036 (recognizing that "nonfrivolous grounds for appeal" are a key indicator that a rational defendant would have wanted to appeal); *see also id*. (noting that a guilty plea "reduces the scope of potentially appealable issues" and thus is a "highly relevant factor"). Indeed, relative to the multiple other grounds for relief raised by the initial (and amended) petition, Clark withdrew all such claims in the reply as "the untenable issues." *See* Reply at 1. The original claims attacked the validity and structure of Title 21 and made Commerce Clause arguments.

Moreover, to the extent that Clark identifies no valid basis to appeal, an appeal could have needlessly jeopardized the progress of his cooperation and the anticipated Rule 35 motion. *See Mayfield v. United States*, 2005 WL 3447669, at *6 (W.D. Mich. Dec. 15, 2005). Notably, the Plea Agreement stipulated to an oxycodone quantity of over 50,000 pills. This yielded a Guidelines range of 235-293 months, though capped by the statutory maximum. *See* DE #241 at 13 (Sentencing Transcript). Although Clark received the twenty-year maximum, given the range implicated, his complaint appears hollow. Additionally, the Government dismissed fifteen-plus counts against Clark. On balance, the circumstances of this case do *not* suggest that a "rational defendant" would have wanted to appeal. *See id*.

Clark also argues that he "reasonably demonstrated to counsel" an interest in appealing because: a) counsel expressed an intent to appeal (during the January 22, 2007 courthouse encounter) and Clark did not object; b) Defendant expressly reserved in the plea agreement the right to appeal the sentence that he received; c) he made "numerous calls" to counsel; and d) his family

"left several messages" about appealing with Gordon's office. *See* Reply at 5. The Court rejects each of these arguments.

First, the Court previously determined that counsel did not express an intent to appeal during the courthouse meeting, but would have been referring to a Rule 35 motion. The conversation, therefore, would have provided no indication that Clark wanted to appeal. Second, even though the plea agreement reserved Clark's right to appeal, Defendant identifies no meritorious grounds for direct review, and an appeal actually could have been counterproductive to the Rule 35 strategy. As such, the Court rejects Clark's summary assertion that counsel should have known that Defendant would have wanted to exercise his reserved appeal rights.

Third, the Court previously found that there was no support or basis in the record for Clark's bare allegation that he had made numerous, unaccepted calls to counsel's office. Last, Clark's contention that his family left several messages with Gordon's office is unsubstantiated hearsay. In addition, Clark's affidavit indicates that the filing deadline would have expired before his family even began calling Gordon's office. *See* Clark I ¶ 4 (indicating that Clark asked his sister and daughter to call Gordon approximately two weeks after Defendant's sentencing hearing). In short, the facts show that Clark agreed to cooperate with authorities and pursue a Rule 35 motion, which is why Defendant strains to produce any credible evidence that he desired to appeal. As such, the Court finds that Clark has not shown that he "reasonably demonstrated to counsel that he was interested in appealing." *See Roe*, 120 S.Ct. at 1036.

Finally, Clark also has not established prejudice in the failure-to-consult context, *i.e.*, that there is a reasonable probability that, but for counsel's failure to consult, Clark would have timely appealed. *See id.* at 1038. The performance and prejudice analyses "overlap", but are not

16

necessarily coextensive. *See id.* at 1039. According to *Roe*, evidence that a defendant had an interest in appealing "alone is insufficient to establish" that the defendant also would have instructed counsel to appeal. *See id.*

Significantly, Clark's prejudice argument has no more substance than his performance analysis. Clark's full argument, as to prejudice, asserts:

> [M]ovant states that he would have appealed if not for counsel's omission. In addition to his own testimony, the movant's sister and daughter could proffer testimony supporting the movant's position that he would have appealed his sentence if not for counsel's omission.

*See* Reply at 6. The tender by Clark plainly is inadequate. Again, Clark's reference to the testimony of his family is unsubstantiated hearsay, and his own assertion that he would have appealed has no objective support. Clark identifies no basis for an appeal, and he completely fails to explain why he would have abandoned or jeopardized the Rule 35 strategy. *See Roe*, 120 S.Ct. at 1039 (recognizing that whether "there were nonfrivolous grounds for appeal" as "highly relevant" to prejudice inquiry). Therefore, Clark has not shown that there is a reasonable probability that he actually would have appealed. *See id.* at 1038.

In sum, the Court finds that Clark has no claim for ineffective assistance. The record indicates that Clark never "expressly" instructed counsel to appeal. The record also shows that counsel may have consulted Clark about appealing by timely mailing the February 23, 2007 letter to Defendant. Even if the written communication was not a proper consultation, Clark has not shown that counsel's failure-to-consult would have been deficient or prejudicial on these facts. Because the Court rejects Defendant's failure-to-appeal/consult claims, and because Defendant withdrew all other issues from consideration, the Court recommends that the District Court DENY with prejudice Clark's § 2255 motion.

**III. Evidentiary Hearing**

Clark requests an evidentiary hearing. On this record, the Court finds that such relief is unnecessary. The reviewing court need not conduct a hearing if the allegations in the petition are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). In this matter, the record conclusively demonstrates that Defendant's habeas motion warrants no relief. *See Blanton*, 94 F.3d at 235. As such, this motion merits no additional evidentiary development by way of a hearing.

**IV. Certificate of Appealability**

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

The Court finds that its determination in this case is not debatable. Clark has not made a "substantial showing" that counsel violated his Sixth Amendment right to effective assistance, as shown by clear precedent applied to the *dispositive* facts. Therefore, the Court recommends that, in the § 2253 context, the District Court refuse to certify any issues for appeal if Movant seeks a Certificate of Appealability.

## V. Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Clark's § 2255 motion, *see* DE #230; and

2) should Clark make a motion under 28 U.S.C. § 2253, the District Court refuse a Certificate of Appealability as to all issues.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

This the 16th day of April, 2008.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge

G:\01-Clerk\2255\06-47 Clark recommend.wpd